Lorraine P. STANFORD, Executrix of
the Estate of William L.
Stanford, Plaintiff,

v.

KUWAIT AIRWAYS CORPORATION, Pan American World Airways, Inc., Northwest Airlines, Inc., Middle East Airlines Airliban, S.A., and International Air Transport Association, Defendants.

No. 85 Civ. 0477 (SWK).

United States District Court,
S.D. New York.

Oct. 20, 1986.

Dupont, Tobin, Levin, Carberry & O'Malley, New London, Conn. by Ralph P. Dupont, for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle, New York City by John N. Romans, Diane da Cunha, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff seeks relief for the wrongful death of her husband, William L. Stanford ("Stanford"), who was allegedly shot and killed by terrorists in Tehran, Iran, on December 6, 1984, after the airplane on which he was a passenger, Kuwait Airways Corporation ("KAC") flight No. 221, was allegedly hijacked by terrorists during its flight from Kuwait to Pakistan. The facts of this case are set out in full in *Stanford and Hegna v. Kuwait Airways Corp., et. al.,* 648 F.Supp. 657 (S.D.N.Y.1986), familiarity with which is assumed.

The above captioned action is before this Court upon the motion by defendant Northwest Airlines, Inc. ("Northwest") for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In her complaint, plaintiff asserts that Northwest owed a duty of care to Stanford since Northwest allegedly had a contractual relationship with Stanford, and an agency relationship with the other airlines named as defendants in this case. Plaintiff also bases her allegations of liability on the Warsaw Convention.[1] For the reasons detailed below, the Court now grants Northwest's motion for summary judgment.

**I**

A motion for summary judgment should be granted if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law on those undisputed facts. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no such issues of fact exist. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In testing whether the movant has met this burden, the Court resolves all ambiguities and doubts against the movant. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). *See also Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975).

Nonetheless, "properly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation". *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. *See Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187–88 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *Clayton v. City of New York,* 596 F.Supp. 355, 360 (S.D.N.Y.1984).

The memoranda of law and affidavits submitted by both plaintiff and Northwest do not dispute the following facts. Stanford purchased an "open" ticket from a travel agent in Karachi, Pakistan, for travel on unspecified airlines and flights from Karachi, Pakistan to various points throughout the Middle East. The ticket was issued on Northwest ticket stock pursuant to an International Air Transport Association ("IATA") interline agreement. *See Stanford and Hegna, supra,* at n. 1. The Northwest ticket stock issued to Stanford was not used to provide Stanford's passage on the ill-fated KAC flight No.

---

**1.** Convention for the Unification of Certain Rules Relating to International Transportation

by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934).

221. Rather, upon arrival in Sanaa, Arab Republic of Yemen ("Yemen"), Stanford traded in the unused portion of his Northwest ticket (which provided for travel, on an unspecified airline or airlines, from Yemen to Abu Dhabi to Karachi), and additional money, for tickets on KAC flights Nos. 782 and 221, providing for transportation from Yemen to Kuwait, and from Kuwait to Karachi, Pakistan. The KAC tickets were issued to Stanford on Pan American World Airways, Inc. ("Pan Am") ticket stock by Marib Travel Agency, a registered Pan Am agent in Sanaa, Yemen.

## BREACH OF CONTRACT

■ Northwest argues in its motion for summary judgment that even if Northwest had undertaken a contractual duty of safe carriage because of Stanford's use of Northwest ticket stock to provide him with air transportation—a position which Northwest heartily contests—any such obligation was terminated when Stanford surrendered the unused portion of his Northwest ticket in Sanaa, Yemen on December 3, 1984.

Northwest's argument must prevail. There is no indication that any obligation continued to exist, or was expected to continue by either party, once Stanford surrendered the unused portion of his Northwest ticket in Sanaa, Yemen,. in exchange for Pan Am tickets. Indeed, the Pan Am tickets purchased by Stanford provided for air transportation to destinations different from those specified on Stanford's Northwest ticket. Plaintiff offers only conclusory and speculative assertions that Pan Am *assumed* Northwest's duties and that Stanford did not intend a novation to occur.

"In order to constitute a novation, ... a contract must discharge a previous contractual duty, create a new contractual duty, and add a party who neither owed nor was entitled to its performance." Restatement, Contracts § 424. It is clear to the Court that Stanford's voluntary surrender of his Northwest ticket and purchase of Pan Am tickets for travel to different destinations constituted a complete novation of any contractual duty owed by Northwest to Stan-

ford. Accordingly, for the reasons discussed above, surrender by Stanford of his Northwest ticket and his purchase of Pan Am tickets for travel to different locations constitute a novation of Northwest's alleged contract with Stanford.

## AGENCY RELATIONSHIP

■ Plaintiff asserts that Pan Am and/or KAC were acting as Northwest's agents when they respectively issued a ticket for, and provided carriage on, KAC flight No. 221, and that Northwest is therefore liable for the alleged negligence of Pan Am and/or KAC which caused the plaintiff's loss.

However, as discussed above,. when Stanford decided to trade in his Northwest ticket and purchase, instead, a Pan Am ticket for KAC flight No. 221, a new relationship was formed between Stanford and Pan Am, as issuer, and KAC, as carrying airline. As carrier, KAC was not acting on behalf of Northwest to fulfill Northwest's obligations, since those obligations had been terminated. *See supra.* Accordingly, KAC was not acting as Northwest's agent when it provided air transport to Stanford. *See e.g., Jensen v. Farrell Lines, Inc.,* 658 F.2d 27 (2d Cir.1981).

■ Plaintiff also argues that an issue of fact exists as to whether Northwest's, Pan Am's and KAC's use of the IATA clearing house constitutes an agency agreement, or joint venture, between the airlines. Before this Court are affidavits and exhibits submitted by plaintiff, Northwest and IATA describing IATA and the various IATA agreements to which defendant airlines are parties.

Plaintiff advances no support for her contention that IATA members or signatories to IATA agreements have undertaken a joint venture or bear any agency relationship one to the other.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to act."

Restatement (Second) of Agency § 1 (1) 1958; *Nelson v. Serwold,* 687 F.2d 278, 282 (9th Cir.1982). An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control. Restatement (Second) of Agency, *supra,* § 1 (1) comment (b), § 14.

*In re Shulman Transport Enterprises, Inc.,* 744 F.2d 293, 295 (2d Cir.1984).

The Court can find no evidence in the papers submitted that IATA created an agency relationship among its members. Northwest had no control or direction over the other airlines, and the IATA agreements did not envision such control. *See In re Shulman Transport Enterprises, Inc., supra* (IATA agreements did not create agency relationship between plaintiff, a middleman for freight shippers and IATA member airlines, and IATA members). Indeed, the IATA interline agreement (the "Agreement") appended to plaintiff's brief in opposition clearly provides for the existence of an agency relationship only between an "issuing airline" and a "carrying airline"—in this instance, between Pan Am and KAC.[2] It is undisputed that Northwest neither issued a ticket for, nor provided the actual carriage on, KAC flight No. 221, and thus the Agreement's agency liability provisions are irrelevant to Northwest. Since this Agreement is the only proof offered by plaintiff in opposition to Northwest's claim that no agency liability exists, plaintiff has not met her burden under Rule 56(c). *Celotex Corp. v. Catrett, supra.*

■■■ Plaintiff does not contend, and the Court does not find, that any other party had the apparent authority to bind Northwest. The existence of apparent authority is a question of fact, and the party asserting its existence must show that the principal was responsible for the appearance of authority in the agent to conduct the transaction in question. *Spinnerin Yarn Co., Inc. v. Apparel Retail Corp.,* 614 F.Supp. 1174 (S.D.N.Y.1985). *See National Union Fire Ins. Co. v. C.P.P. Ins. Agency,* 563 F.Supp. 1216 (S.D.N.Y.1983); *General Overseas Films, Ltd. v. Robin Intern., Inc.,* 542 F.Supp. 684 (S.D.N.Y.), *aff'd,* 718 F.2d 1085 (1982).

In this instance, Stanford traded in his Northwest ticket and purchased his Pan Am tickets at Marib Travel Agency, which he apparently knew to be a Pan Am agent. There is no indication that Marib Travel Agency issued Northwest tickets, or that Stanford thought it could do so. Nor is there any suggestion that Stanford was aware of the IATA, IATA interline agreements, or any relationship between Pan Am and Northwest. Moreover, Northwest did not indicate that Marib Travel Agency could act as its agent.

■■■ The Court further finds that plaintiff's argument that a joint venture existed among IATA members is meritless.

After consideration of the factual and legal arguments advanced by the parties, the Court finds that Northwest is entitled to summary judgment on this issue as a matter of law.

## WARSAW CONVENTION LIABILITY

■■■ Plaintiff acknowledges that Stanford had no dealings with Northwest other

---

**2.** The IATA "Interline Traffic Agreement-Passenger", annexed to plaintiff's brief in opposition to defendant's motion for summary judgment, provides:

the carrying airline, as principal, indemnifies the issuing airline ... as Agent, from and against all claims, demands, costs, expenses and liabilities arising from the carrying airline's provision of or failure to provide carriage pursuant to any ticket ... properly issued, completed or delivered by the issuing airline: and the issuing airline indemnifies the carrying airline ... from and against all

claims, demands, costs, expenses and liabilities arising from the improper issue, completion or delivery of tickets ... effected by the issuing airline.

Art. V, para. (1).

The agreement further defines "Airline, carrying" as "a party hereto over whose routes a passenger and his baggage are transported or are to be transported", and "Airline, issuing" as "a party hereto which issues a ticket or miscellaneous charges order for transportation over the routes of another party(ies) to this Agreement". Art. I, para. (1), (3).

than Stanford's acceptance of his Northwest ticket and his use of the Northwest ticket on the first leg of his journey prior to trading in the unused portion of his ticket in Sanaa, Yemen. Nonetheless, plaintiff asserts that she is entitled to recovery against Northwest under the Warsaw Convention.

The provisions of the Warsaw Convention, however, apply only to actual carriers. The Warsaw Convention, Art. 30, explicitly states that its liability provisions apply only to carriers who accept "passengers, baggage or goods" and "performed the transportation during which the ... accident ... occurred ...". Since it is undisputed that Northwest did not provide either the ticket or the carriage for the flight "during which the accident ... occurred", plaintiff has failed to show that she is entitled to recovery under the Warsaw Convention.

The Court finds that plaintiff's papers fail to show any genuine issue of material fact, and therefore, that defendant Northwest is entitled to summary judgment in its favor as a matter of law. *See Celotex Corp. v. Catrett, supra.* In so holding, the Court notes that plaintiff has completed substantial discovery. Plaintiff has deposed several witnesses and defendants Northwest and IATA have produced numerous documents, many of which have been appended to plaintiff's papers.

 Because the Court dismisses this action against Northwest, the Court need not reach Northwest's other arguments. The Court notes, however, that Northwest's position that Stanford assumed the risk of being murdered by terrorists on an airplane is wholly meritless. The suggestion that an American diplomat, serving this country in its pursuit to aid developing nations, should anticipate murderous terrorist attacks and consequently be denied the protection of the courts, is outrageous. The Court believes Northwest's argument to be a perversion of the assumption of risk doctrine, and a position not to be recognized.

## II

## SANCTIONS

 Northwest, in its motion for summary judgment, also seeks the imposition of sanctions against plaintiff's attorneys under Fed.R.Civ.P. 11. The Court finds that plaintiff and her counsel brought this action against Northwest with a good faith belief in the allegations made in the complaint, after a reasonable inquiry into the law and facts forming the basis of this action. Thus, the imposition of sanctions against plaintiff's counsel is inappropriate. *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985).

The Court notes that while Rule 11 has increasingly become a potent tool in the hands of members of the Bar, it is in danger of becoming abused. In this case, Northwest, in asking the Court to determine whether plaintiff's counsel employed adequate care in drafting his papers, presented the Court with a "canned" brief. Northwest's brief concludes as follows:

> As shown above, plaintiff's suit against *IATA* is baseless both as to fact and as to law and merits the award of attorneys' fees to *IATA.*

## CONCLUSION

> *Northwest's* motion for summary judgment dismissing the complaint and for its costs and attorneys' fees should be granted.

Memorandum of Law in Support of Northwest Airline's Motion for Summary Judgment, p. 22 (emphasis supplied).

Accordingly, Northwest's motion for costs and attorneys' fees under Fed.R.Civ.P. 11 is denied.

SO ORDERED.