**ANGLO–IBERIA UNDERWRITING MANAGEMENT COMPANY, Plaintiff–Counter–Defendant–Appellant,**

**Industrial Re International, Inc., Plaintiff–Appellant**

v.

**Daniel J. LODDERHOSE and Security Resources International, Inc., Defendants–Counter–Claimants–Cross–Defendants–Appellees,**

**GC Insurance Brokers, Limited, GC Intermediaries Limited, Peter I. Greengrass, Leslie J. Cooper and A.J. Smith, Defendants–Counter–Claimants–Cross–Claimants–Appellees,**

P.T. Jamsostek (Persero) a/k/a PT. Astek and Republic of Indonesia, Prio Adhi Sartono, Consolidated–Defendants–Appellees.

No. 03–9260–cv.

United States Court of Appeals, Second Circuit.

May 25, 2007.

John R. Keough, III, (Cody D. Constable, of counsel), Waesche, Sheinbaum & O'Regan, P.C., New York, NY, for Plaintiffs–Appellants.

Carolyn B. Lamm, (Frank Panopoulos and Antonia R. Soares, on the brief), White & Case LLP, Washington, DC, for Defendants–Appellees.

PRESENT: Hon. WILFRED FEINBERG, Hon. JOSEPH M. McLAUGHLIN, and Hon. GUIDO CALABRESI, Circuit Judges.

## SUMMARY ORDER

Between September 1995 and September 1996, Defendant Mr. Prio Adhi Sartono ("Sartono")—then an employee of the Indonesian state-owned social security in-surer P.T. Jamsostek (Persero) ("Jamsostek"),[1] who, during the relevant period of time, had been on leave studying for an M.B.A. in Colorado—orchestrated and carried through an international reinsurance fraud scam which ultimately cost Plaintiffs–Appellants Anglo–Iberia Underwriting Management Company and Industrial Re International, Inc. (collectively "Plaintiffs–Appellants") an estimated $55 million. In addition to bringing suit against Sartono and his accomplices in their individual capacities,[2] Plaintiffs–Appellants initiated this action against the Republic of Indonesia ("Indonesia") and Jamsostek (collectively, "Defendants–Appellees"), pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330. *See generally Robinson v. Malaysia,* 269 F.3d 133, 138 (2d Cir.2001) ("The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." (citations and internal quotation marks omitted)).

## BACKGROUND

Plaintiffs–Appellants's first, second, third and fourth causes of action were brought against Indonesia and Jamsostek.[3] The first three causes of action asserted that Indonesia and Jamsostek breached their contractual obligations to Plaintiffs–Appellants. The fourth cause of action, however, was a "negligent supervision" claim, which alleged:

Defendants [Jamsostek] and/or Indonesia acted negligently and in breach of their duties of due care owed to plain-

1. Prior to 1996, and at the time of the complained-of incidents, Jamsostek was known as P.T. Astek (Persero). "Persero" is the Indonesian term used to designate 100–percent share ownership by the state.

2. Plaintiffs–Appellants have, to date, prevailed in district court in their claims against Sartono and his accomplices in their individual capacities. *See Anglo–Iberia et al. v. Lodderhose et al.,* 282 F.Supp.2d 126 (S.D.N.Y. Sept.12, 2003) (Marrero, J.); *Anglo–Iberia et al. v. Lodderhose et al.,* 287 F.Supp.2d 454 (S.D.N.Y. Oct.16, 2003) (Marrero, J.).

3. The remaining causes of action in the complaint were brought against Sartono, and are *not at issue in this appeal.*

tiffs in, among other things, failing to supervise and manage properly the conduct of their directors, officers, managers, supervisors, account representatives, employees, agents and other representatives, including but not limited to Prio Adhi Sartono, while such persons were in the United States in the course of their employment and under the support and the direction of [Jamsostek] and Indonesia, and/or while in Indonesia; in carelessly and recklessly disregarding the improper, deceptive, misleading, wrongful and/or fraudulent conduct of Prio Adhi Sartono before, during and after defendant [Jamsostek] sanctioned, paid for and otherwise supported, promoted, aided and abetted his visit(s) and wrongful business activities in the United States, when [Jamsostek's] directors and officers knew or should have known Sartono could reasonably be expected to continue to engage in similar wrongful conduct while in the United States and in fact was doing so; and in failing to prevent the fraudulent, deceptive and/or unauthorized and wrongful conduct of such persons within its employ and control even though they knew or should have known thereof.

Indonesia and Jamsostek moved to dismiss all four causes of action on a number of grounds, including lack of subject matter jurisdiction under the FSIA. The FSIA provides, at 28 U.S.C. § 1604, that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [28 U.S.C. §§ ] 1605–1607." 28 U.S.C.

§ 1605 sets forth, *inter alia*, the circumstances in which "[a] foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States." *See Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 388 (2d Cir.2000) (explaining that, under the FSIA, "a foreign state, including its agencies and instrumentalities, is presumptively immune from suit in U.S. courts unless a specific FSIA exception to such immunity applies"). The Defendants–Appellees contended that, on the relevant facts, no exception applied.

Plaintiffs–Appellants conceded that the Defendants–Appellees are "foreign states" under the FSIA, and hence presumptively entitled to sovereign immunity. But Plaintiffs–Appellants argued that the FSIA's "commercial activity" exception[4] applied, because (1) the reinsurance activities of Sartono were clearly "commercial" in nature; (2) those activities were attributable to Indonesia and Jamsostek; and (3) Jamsostek's own insurance activities are "commercial" in nature as well.

The Defendants–Appellees did not dispute that Sartono's activities were "commercial" in nature. Rather, they argued that they were not *responsible* for Sartono's actions, whatever their nature, because Sartono lacked any actual or apparent authority to conduct reinsurance on behalf of Jamsostek. In support of this position, the Defendants–Appellees supplemented their motions to dismiss with, *inter alia*, fact declarations from officials at Jamsostek and the Indonesia Attorney General's Office, expert declarations on in-

---

**4.** The commercial activity exception provides that FSIA sovereign immunity is unavailable for foreign states:

> (a) ... in any case—... (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a com-

mercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

ternational banking transactions, and expert opinions on Indonesian law.

In separate opinions, the district court granted Indonesia's and Jamsostek's motions to dismiss for lack of subject matter jurisdiction.

In a June 4, 1998 opinion and order, *Anglo–Iberia et al. v. Jamsostek*, No. 97 Civ. 5116, 1998 WL 289711 (S.D.N.Y. June 4, 1998) (Baer, *J.*), the district court granted Indonesia's motion to dismiss in full, and "reserve[d] decision on Jamsostek's motion to dismiss." *Id.* at *1. In so doing, the district court properly resolved various factual disputes between the parties. *See Robinson*, 269 F.3d at 141 ("When the defendant has ... challenged the factual basis of the court's jurisdiction ... the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." (internal quotation marks and citations omitted)); *see also id.* ("The district court's review of the evidence before it on a motion to dismiss based on an assertion of sovereign immunity has particular significance because of the necessity of resolving that issue early on if possible.").

The district court found that, because Indonesia did not learn of Sartono's activities until September 1996, and because, under Indonesian law, Sartono lacked authority to act for Indonesia, there was no showing of apparent or actual authority. The district court also found that there was no showing of "alter-ego" liability. In light of these findings, the district court granted, in full, Indonesia's motion to dismiss for lack of subject matter jurisdiction.

As for Jamsostek, the district court again found that no actual authority could have been granted to Sartono under Indonesian law. Turning to the question of whether Jamsostek clothed Sartono with apparent authority, the district court considered Plaintiffs–Appellants's assertions

that Sartono made use, *inter alia*, of Jamsostek's official letterhead, stamp, bank accounts, and fax machines to facilitate his reinsurance scheme. The district court noted various declarations submitted by Jamsostek employees, which, "if believed, would cast doubt on the authenticity of the communications and documents [Plaintiffs–Appellants] argue conferred apparent authority." *Anglo–Iberia*, No. 97 Civ. 5116, 1998 WL 289711, at *4. Nonetheless, the district court concluded that, "[b]efore crediting the statements made by the Jamsostek employees and in an abundance of caution, [Plaintiffs–Appellants] will be provided an opportunity to challenge the credibility of the key declarants at an evidentiary hearing." *Id.* at *5.

The evidentiary hearing took place on July 30, 1998. Plaintiffs–Appellants were allowed to examine three of the Jamsostek employees who had submitted declarations. On February 16, 1999, the district court issued an opinion and order granting Jamsostek's motion to dismiss for lack of subject matter jurisdiction. *Anglo–Iberia et al. v. Jamsostek*, No. 97 Civ. 5116, 1999 WL 76909 (S.D.N.Y. Feb.16, 1999) (Baer, *J.*). First, the district court found that "the testimony adduced at the hearing buttresses the evidence presented by Jamsostek, in the form of declarations, with the motion to dismiss." *Id.* at *2. Specifically, the district court concluded that "there is no basis for holding Jamsostek liable under the apparent authority doctrine." *Id.* at *3. Second, the district court found that, even assuming *arguendo* that Jamsostek had conferred apparent authority on Sartono, Plaintiffs–Appellants failed to demonstrate reliance on Jamsostek's alleged acts and omissions. And finally, the district court held that the "novelty of the transaction for Jamsostek should have alerted the plaintiffs to the danger of fraud," such that "the duty of inquiry" was

triggered, which duty Plaintiffs–Appellants failed to satisfy. *Id.* at *5.

## DISCUSSION

Plaintiffs–Appellants now appeal from the district court's June 4, 1998 and February 16, 1999 decisions, and argue that the district court erred in granting Indonesia's and Jamsostek's motions to dismiss. " 'The standard of review applicable to district court decisions regarding subject matter jurisdiction under the FSIA is clear error for factual findings and *de novo* for legal conclusions.' " *Robinson,* 269 F.3d at 138 (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 150–51 (2d Cir.2001)). Moreover, " [t]he existence of apparent authority is a question of fact.' " *Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 994 (2d Cir.1991) (quoting *Stanford v. Kuwait Airways Corp.,* 648 F.Supp. 1158, 1162 (S.D.N.Y.1986)); *but see id.* (citing *Karavos Compania Naviera S.A. v. Atlantica Export Corp.,* 588 F.2d 1, 8 n. 15 (2d Cir.1978), and noting that, in that decision, the panel "treat[ed] apparent authority as a mixed question of law and fact in the context of a finding by the court pursuant to Fed.R.Civ.P. 52(a)").[5]

For substantially the reasons given by the district court, we affirm that court's Rule 12(b)(1) dismissal of Plaintiffs–Appellants's first, second, and third causes of action against Indonesia and Jamsostek.

But the district court's dismissal, without discussion, of Plaintiffs–Appellants's fourth cause of action, its negligent supervision claim, may not have been appropriate. Therefore, we vacate and remand the negligent supervision claim to the district court for further consideration.

The district court properly dismissed Plaintiffs–Appellants's first, second, and third causes of action, which were breach of contract claims based on assertions of actual and apparent authority—authority which the district court found to be lacking. But Plaintiffs–Appellants's negligent supervision claim does not rely on principles of agency law. It does not seek to hold Indonesia and Jamsostek responsible for the actions of Sartono.[6] Rather, it is directed at Jamsostek's own alleged negligence. Moreover, the claim arguably comes within the language of the third clause of 28 U.S.C. § 1605(a)(2), which renders sovereign immunity unavailable in any case "in which the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that causes a direct effect in the United States." [7] *See generally Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 618, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (discussing the meaning of "direct effect"); *Garb v. Republic of Poland,* 440 F.3d 579, 587 (2d Cir.2006) (discussing the meaning of "in connection with").

---

5. Of course, even if apparent authority were a mixed question of law and fact, we would still review *factual components* for clear error. *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 143 (2d Cir.2005) ("[M]ixed questions of law and fact [are reviewed] either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." (internal quotation marks omitted)).

6. On the other hand, Plaintiffs–Appellants do argue, in effect, that Indonesia should be held liable for the alleged negligence of *Jamsostek.*

We decline to rule on the merits of this contention at this stage in the proceedings.

7. Ostensibly, the "act outside the territory of the United States" would be Jamsostek's negligent supervision of its present and former employees, including Sartono; the negligence is alleged to be "in connection with" Jamsostek's social security insurance activities (which is argued to be a commercial activity); and the "direct effect in the United States" is the claimed potential for fraud that Jamsostek's negligent supervision may have spawned.

Moreover, while it is possible that Plaintiffs–Appellants's negligent supervision claim is barred by the Supreme Court's decision in *Saudi Arabia v. Nelson*, 507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993), it is also possible that that opinion does not control the present case. *Nelson* did not involve, as this case does, a tandem of contract and negligence claims. Instead, in *Nelson*, the plaintiff brought an intentional tort claim and a negligent failure to warn claim. In particular, the *Nelson* plaintiff alleged that the Saudi government recruited him for work at a hospital, signed an employment contract with him, and subsequently employed him. Later, and while plaintiff was working, he was arrested, imprisoned, and tortured. Upon release, plaintiff brought a suit, pursuant to the FSIA, against the Saudi government, alleging (1) that the Saudi government had subjected him to *intentional* torts—including battery, unlawful detainment, wrongful arrest and imprisonment, false imprisonment, inhumane torture, disruption of normal family life, and infliction of mental anguish; and (2) that the Saudi government "negligently fail[ed] to warn [plaintiff] of otherwise undisclosed dangers of his employment." *Nelson*, 507 U.S. at 354, 113 S.Ct. 1471.

The *Nelson* Court, in dismissing the plaintiff's claims, observed that the plaintiff "ha[s] not, after all, alleged breach of contract, but personal injuries caused by petitioners' intentional wrongs and by [the Saudi government's] negligent failure to warn [plaintiff] that they might commit these wrongs. Those torts, and not the arguably commercial activities that preceded their commission, form the basis for the [plaintiff's] suit." *Id.* at 358, 113 S.Ct. 1471. After dismissing the plaintiff's allegations of intentional torts, the Court considered plaintiff's negligence claim:

> In addition to the intentionally tortuous conduct, the [plaintiff] claim[s] a separate basis for recovery in [the Saudi government's] failure to warn [plaintiff] of the hidden dangers associated with his employment. [Plaintiff] allege[s] that, at the time [the Saudi government] recruited [plaintiff] and thereafter, they failed to warn him of the possibility of severe retaliatory action if he attempted to disclose any safety hazards he might discover on the job. In other words, [the Saudi government] bore a duty to warn of their own propensity for tortuous conduct.

*Id.* at 363, 113 S.Ct. 1471. The *Nelson* Court then flatly rejected this claim:

> [T]his is merely a semantic ploy. For aught we can see, a plaintiff could recast virtually any claim of intentional tort committed by sovereign act as a claim of failure to warn, simply by charging the defendant with an obligation to announce its own tortuous propensity before indulging it. To give jurisdictional significance to this feint of language would effectively thwart the Act's manifest purpose of codifying the restrictive theory of foreign sovereign immunity.

*Id.*

The case before us raises the question of whether, in light of *Nelson*, Plaintiffs–Appellants's negligent supervision claim—which is based on allegations of negligence related to a breach of contract, rather than intentional tort—is similarly a "semantic ploy." *Compare* Appellant Br. at 26 ("[Plaintiffs–Appellants] contend[ ] that [Jamsostek] . . . negligently failed to prevent its employees, officers and others from perpetrating fraud.") *and id.* ("Even if [Jamsostek] did not authorize the acts of its employees and others as it contends, [Jamsostek's] acts and omissions in failing to supervise or control its employees and others to prevent the allegedly unauthorized acts are 'connected' with [Jamsostek's] commercial activity of carrying on its insurance business.") *with* Appellee Br.

at 58 ("Plaintiffs' negligent supervision claim made in tandem with its fraud claim fails because the Supreme Court has foreclosed reliance upon [*all*] negligence claims as a means to bring foreign sovereigns within the FSIA's commercial activity exception.").[8]

The district court appears not to have addressed this question. Nor has it considered any other grounds on the basis of which the negligent supervision claim might be dismissed even if *Nelson* does not apply. Accordingly, we vacate the district court's dismissal for lack of subject matter jurisdiction as to Plaintiff–Appellants's negligent supervision claim against Indonesia and Jamsostek, and remand to that court for its consideration of this claim, and the various issues it raises, in the first instance.

## CONCLUSION

The district court's dismissal, for lack of subject matter jurisdiction, of Plaintiffs–Appellants's first, second and third claims against Indonesia and Jamsostek is AFFIRMED. The district court's dismissal of Plaintiffs–Appellants's fourth cause of action—the negligent supervision claim—is VACATED and REMANDED for further proceedings.

---

**8.** We further note, without expressing any opinion as to whether the distinction is relevant, that the failure to warn claim in *Nelson* relied on the first clause of the commercial activity exception whereas the negligent supervision claim in this case relied on the third.