07-2579-cv
Matar v. Dichter

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: January 16, 2009        Decided: April 16, 2009)

Docket No. 07-2579-cv

- - - - - - - - - - - - - - - - - - - -x

Ra'ed Ibrahim Mohamad Matar, on behalf of himself and his deceased wife Eman Ibrahim Hassan Matar, and their deceased children Ayman, Mohamad and Dalia, Mahmoud Subhai Al Huweiti, on behalf of himself and his deceased wife Muna Fahmi Al Huweiti, their deceased sons Subhai and Mohammed and their injured children, Jihad, Tariq, Khamis, and Eman and Marwan Zeino, on his own behalf,

                Plaintiffs-Appellants,

        - v.-

Avraham Dichter, former Director of Israel's General Security Service,

                Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - -x


    Before:        JACOBS, Chief Judge, KEARSE, HALL,
                   Circuit Judges.

    Appellants, survivors of an Israeli military attack on

a suspected terrorist housed in a residential apartment

building in Gaza City, sued defendant Avraham Dichter,

former head of the Israeli Security Agency, alleging war

crimes and violations of international law, and seeking damages pursuant to the Alien Tort Statute and the Torture Victim Protection Act, 28 U.S.C. § 1350 & note. The United States District Court for the Southern District of New York (Pauley, J.) dismissed the complaint on the grounds that Dichter is immune from suit under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602-1611, and that (in the alternative) the suit presents a non-justiciable political question. We affirm on the ground that Dichter is immune from suit under common law for the acts alleged.

MARIA C. LAHOOD, Katherine Gallagher, Jennifer M. Green, on the brief, Center for Constitutional Rights, New York, NY, for Appellants.

ROBERT WEINER, Jean E. Kalicki, Matthew A. Eisenstein, on the brief, Arnold & Porter, LLP, Washington, D.C., Kent A. Yalowitz, on the brief, Arnold & Porter, LLP, New York, NY, for Appellee.

SERRIN TURNER, David S. Jones, on the brief, Assistant United States Attorneys, for Michael J. Garcia, United States Attorney for the Southern District of New York, John B. Bellinger, III, on the brief, United States Department of State, Jeffrey S. Bucholtz, Acting United States Assistant Attorney General,

Douglas N. Letter, Lewis S. Yelin, on the brief, United States Department of Justice, *for Amicus Curiae United States of America*.

DENNIS JACOBS, <u>Chief Judge</u>:

Appellants allege that they were injured or lost family members in the 2002 aerial bombing of a Gaza apartment complex by the Israeli Defense Force, and they allege that appellee Avraham Dichter, former head of the Israeli Security Agency, personally participated in the decision to bomb. The United States District Court for the Southern District of New York (Pauley, <u>J.</u>) dismissed appellants' complaint, ruling (1) that Dichter is immune from suit under the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. §§ 1602-1611, or (2) that in the alternative, the complaint states a non-justiciable political question. On appeal, appellants argue that the FSIA does not extend to former foreign officials such as Dichter; that the FSIA does not immunize certain violations of domestic, foreign, and international law; and that the complaint is justiciable. We conclude that even if the FSIA does not apply, Dichter would nonetheless be immune under common law. We therefore affirm the judgment of the district court.

**BACKGROUND**

On July 22, 2002, an Israeli Defense Force aircraft bombed an apartment complex in Gaza City in the Gaza Strip, a Palestinian territory then occupied by Israel.  The attack was designed to kill Saleh Mustafah Shehadeh, an alleged leader of the terrorist organization Hamas, and it succeeded.[1]  Collateral damage included the deaths of fourteen people, as well as the destruction of the apartment building and surrounding structures.  Appellants were injured in the attack, or represent others who were killed or injured.

At the time of the attack, defendant Avraham Dichter was director of the Israeli Security Agency (the "Agency"), one of that country's main security and intelligence services.[2]  Plaintiffs allege that the Agency developed and participated in a "practice" of "'targeted assassinations,'" selecting and locating targets and exercising final say over

---

[1] Hamas has been designated a Foreign Terrorist Organization pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1189.  <u>See</u> United States Department of State, <u>Foreign Terrorist Organizations Fact Sheet</u>, April 8, 2008, http://www.state.gov/s/ct/rls/fs/08/103392.htm.

[2] The complaint refers to the Agency as the General Security Service, a direct translation of the organization's Hebrew name.

the attacks, and that Dichter "participated in the specific decision to authorize" the July 2002 attack.

The complaint, filed in December 2005, alleges that by committing war crimes and other violations of international law, Dichter is liable for damages pursuant to the Alien Tort Statute (ATS) and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350 & note. At the time that suit was filed, Dichter had left the Agency and was no longer an official of the State of Israel.[3]

In February 2006, Dichter moved to dismiss, arguing (1) that he was immune under the FSIA; (2) that the suit presented a non-justiciable political question; and (3) that the suit implicated the act of state doctrine. At about the same time, Israel's Ambassador to the United States, Daniel Ayalon, wrote the United States State Department declaring that "anything Mr. Dichter did . . . in connection with the events at issue . . . was in the course of [his] official duties, and in furtherance of official policies of the State of Israel." The district court invited the State Department

_____

[3] Dichter subsequently became the Israeli Minister of Public Security. See State of Israel Ministry of Public Security, http://www.mops.gov.il/BPEng/About+MOPS/TheMinister/ (last visited Feb. 11, 2009).

to "state its views, if any" on the issues raised in the motion to dismiss, or other issues it deemed relevant to the case. The State Department's statement of interest, filed in November 2006, opined that the FSIA afforded immunity for countries, not for individuals, but urged the court to dismiss the suit nevertheless on the ground that Dichter was entitled to immunity under common law as an official of a foreign state.

The district court granted Dichter's motion to dismiss. Rejecting the government's argument that the FSIA did not apply to individual foreign officials, the district court ruled that Dichter was an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603. The court further rejected appellants' arguments that FSIA immunity does not extend to acts taken outside the scope of lawful authority and that FSIA immunity is trumped by liability under the TVPA. In the alternative, the district court ruled that appellants' suit raised a non-justiciable political question. The court declined to reach Dichter's argument that the suit was barred by the act of state doctrine. This appeal followed.

**DISCUSSION**

**I.**

The threshold question is whether Dichter enjoys immunity from suit, either under the FSIA or under common law. If Dichter is immune, we need not determine whether the appellants' complaint presents a non-justiciable political question.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in federal court." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989). "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). A defendant seeking dismissal for lack of subject matter jurisdiction under the FSIA must make a prima facie showing that it is a foreign sovereign. Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002). The burden then shifts to the plaintiff to present evidence showing that an exception to the FSIA applies. Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016

(2d Cir. 1993).  We review a district court's decision regarding subject matter jurisdiction under the FSIA for clear error as to factual findings, and de novo as to legal conclusions.  Robinson v. Government of Malaysia, 269 F.3d 133, 138 (2d Cir. 2001).

The briefs on appeal join issue on whether the FSIA applies to individual foreign government officials, an open question at the time.  See Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 160 (2d Cir. 2007).  After the briefs were filed, but before oral argument, we had occasion to decide this question directly, and we concluded that "an individual official of a foreign state acting in his official capacity is the 'agency or instrumentality' of the state, and is thereby protected by the FSIA."  In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 81 (2d Cir. 2008).  The district court thus arrived first at the same conclusion.

Appellants would distinguish In re Terrorist Attacks on the ground that the FSIA does not immunize former foreign government officials, and that Dichter--unlike the individual defendants in that case--was no longer an official of a foreign government when suit was filed. Appellants rely on Dole Food Co. v. Patrickson, 538 U.S. 468

(2003), which considered whether a corporation's status as an instrumentality of a foreign state is defined "as of the time an alleged tort or other actionable wrong occurred or, on the other hand, at the time suit is filed." Id. at 471. The Dole Food Court looked to the second clause of 28 U.S.C. § 1603(b)(2), which defines an instrumentality to be, inter alia, a corporation "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." Noting that the provision "is expressed in the present tense," the Supreme Court concluded that "instrumentality status [is] determined at the time suit is filed." Dole Food, 538 U.S. at 478. Appellants argue that the agency status of an individual, like the instrumentality status of a corporation, should be determined at the time suit is filed.

Appellants did not raise this argument in the district court, and Dichter urges that we decline to consider it on that ground. We could decide the question nevertheless.[4]

_____

[4] The general rule is "that an appellate court will not consider an issue raised for the first time on appeal," Greene v. United States, 13 F.3d 577, 586 (2d Cir. 1994); but the rule is relaxed to avoid manifest injustice or to consider an issue of law when there is no need for additional fact-finding. Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 302 (2d Cir. 1996). Here, the issue is

9

Two of our sister circuits have written on the applicability of Dole Food to individual foreign officials, and they have reached contrary conclusions--albeit in dicta.[5]  But we decline to decide this close question because, whether the FSIA applies to former officials or not, they continue to enjoy immunity under common law.

## II.

Before the FSIA, courts determined the immunity of foreign sovereigns pursuant to principles announced by Chief Justice John Marshall in The Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116 (1812).  Summarizing Marshall's ruling that foreign sovereigns have no absolute right to immunity in American courts, the Supreme Court has explained

---

purely legal and there is no need for additional fact-finding.

[5] In Belhas v. Ya'alon, 515 F.3d 1279, 1284-86 (D.C. Cir. 2008), the D.C. Circuit commented (in dicta) that Dole Food was not applicable to claims of immunity by individual officials, noting that international law had long recognized individual immunity based on an officer's official actions. On the other hand, the Fourth Circuit in Yousuf v. Samantar, 552 F.3d 371, 381-83 (4th Cir. 2009) commented (also in dicta) that Dole Food was directly applicable to claims of immunity by individual officials, noting that the present-tense statutory language cited by the Dole Food court applied to individuals as well as corporations.

10

that "as a matter of comity, members of the international community had implicitly agreed to waive the exercise of jurisdiction over other sovereigns in certain classes of cases . . . ." Republic of Austria v. Altmann, 541 U.S. 677, 688 (2004) (citing Schooner Exchange, 11 U.S. at 136). And because these cases typically raised "questions of policy [rather] than of law," Marshall suggested that they were "for diplomatic, rather than legal discussion." Schooner Exchange, 11 U.S. at 146. Accordingly, courts have generally "deferred to the decisions of the political branches--in particular, those of the Executive Branch--on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 486 (1983).

From Schooner Exchange until 1952, the Executive routinely called for immunity in all cases against friendly foreign sovereigns. Id. In 1952 the State Department adopted a "restrictive" theory of foreign sovereign immunity under which invocations of immunity were confined to a foreign sovereign's public acts, but did not extend to its strictly commercial acts. Id. at 486-87. In practice, this approach proved troublesome. In 1976, Congress enacted the

11

FSIA in an effort to codify the rules governing foreign sovereign immunity, removing the immunity determination from the political branches by setting out a legal framework, including certain substantive standards and procedural rules, within which issues of immunity are to be decided by the judiciary. Altmann, 541 U.S. at 691; see Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, § 4, 90 Stat. 2891, 2891-97 (1976).

If (as may be) the FSIA does not apply to former foreign officials, it does not follow that these officials lack immunity. The FSIA is a statute that "invade[d] the common law" and accordingly must be "read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident," Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783 (1952); see also Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 127 (2d Cir. 2001). "In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." United States v. Texas, 507 U.S. 529, 534 (1993) (quoting Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625 (1978)). And "[a] party contending that

12

legislative action changed settled law has the burden of showing that the legislature intended such a change." Green v. Bock Laundry Machine Co., 490 U.S. 504, 521 (1989).

The FSIA is silent with regard to former foreign government officials. Appellants argue that Congress therefore must have intended to strip former officials of the immunity they enjoyed under the Schooner Exchange scheme. But silence does not suffice; and appellants have identified no provision or feature of the FSIA that bespeaks intent to abrogate that common-law scheme with respect to former officials. It follows that if, as appellants contend, the FSIA does not apply to former government officials, we must look to common law to determine (a) whether former officials are entitled to immunity under the common-law Schooner Exchange scheme, and (b) if so, whether Dichter is entitled to immunity "in conformity to the principles accepted by the department of the government charged with the conduct of our foreign relations." Republic of Mexico v. Hoffman, 324 U.S. 30, 35 (1945).

Common law recognizes the immunity of former foreign officials. At the time the FSIA was enacted, the common law of foreign sovereign immunity recognized an individual

official's entitlement to immunity for "acts performed in his official capacity." Restatement (Second) of Foreign Relations Law of the United States § 66(f) (1965); see also Heaney v. Gov't of Spain, 445 F.2d 501, 504 (2d Cir. 1971) (plaintiff's concession that defendant was "at all relevant times 'an employee and agent of the defendant Spanish Government'" sufficed to dispose of the claim against the individual defendant). An immunity based on acts--rather than status--does not depend on tenure in office.

Is Dichter entitled to common-law immunity? Prior to the enactment of the FSIA, we "deferred to the decisions of the political branches--in particular, those of the Executive Branch--on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities." Verlinden, 461 U.S. at 486. The United States--through the State Department and the Department of Justice--filed a Statement of Interest in the district court specifically recognizing Dichter's entitlement to immunity and urging that appellants' suit "be dismissed on immunity grounds." Accordingly, even if Dichter, as a former foreign official, is not categorically eligible for immunity under the FSIA (a question we need not decide here), he is

14

nevertheless immune from suit under common-law principles that pre-date, and survive, the enactment of that statute.

## **III.**

Appellants' two remaining arguments, raised in the FSIA context, are equally applicable in the common-law context. First, they argue that there can be no immunity--statutory or otherwise--for violations of jus cogens (international law norms). But we have previously held that there is no general jus cogens exception to FSIA immunity. See Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239, 242-45 (2d Cir. 1996) (considering, and rejecting, the argument that "a foreign state should be deemed to have forfeited its sovereign immunity whenever it engages in conduct that violates fundamental humanitarian standards . . . ."). And in the common-law context, we defer to the Executive's determination of the scope of immunity. As the Seventh Circuit has explained,

> Just as the FSIA is the Legislative
> Branch's determination that a nation
> should be immune from suit in the courts
> of this country, the immunity of foreign
> leaders remains the province of the
> Executive Branch. The Executive Branch's
> determination that a foreign leader
> should be immune from suit even where the

15

> leader is accused of acts that violate jus cogens norms is established by a suggestion of immunity.

Ye v. Zemin, 383 F.3d 620, 627 (7th Cir. 2004). A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity.

Appellants also argue that any immunity Dichter might enjoy is overridden by his alleged violations of the TVPA, which makes liable "[any] individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to extrajudicial killing." 28 U.S.C. § 1350 note sec 2(a). Because the TVPA only applies to individuals acting under actual or apparent governmental authority, appellants argue that a grant of immunity to a former official such as Dichter would essentially write the TVPA out of existence.

This is incorrect. As to statutory immunity, the TVPA applies to individual officials who fall into one of the enumerated exceptions listed in 28 U.S.C. § 1605. See Belhas, 515 F.3d at 1288; see also H.R. Rep. No. 102-367, at 5 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 88 ("The TVPA is subject to restrictions in the Foreign Sovereign Immunities Act of 1976."); S. Rep. No. 102-249, at 7 (1991)

16

("[T]he TVPA is not meant to override the Foreign Sovereign Immunities Act of 1976."). And because the extension of common-law immunity is discretionary, the TVPA will apply to any individual official whom the Executive declines to immunize.

In summary, we need not decide whether the FSIA applies to a former official of a foreign government (a close and interesting question), because if the FSIA does not apply, a former official may still be immune under common-law principles that pre-date, and survive, the enactment of the FSIA. Here, the Executive Branch has urged the courts to decline jurisdiction over appellants' suit, and under our traditional rule of deference to such Executive determinations, we do so. We therefore affirm the judgment of the district court dismissing appellants' complaint for lack of jurisdiction; and because we decide the appeal on immunity grounds, we need not reach the district court's alternative holding that the case raises a non-justiciable political question.

17