Anglo-Iberia v. Lodderhose

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2009

(Argued: October 27, 2009          Decided: March 29, 2010)

Docket Nos. 08-2666-cv (L), 08-2836-cv (XAP)

--------------------------------------------------------x

ANGLO-IBERIA UNDERWRITING MANAGEMENT COMPANY,

Plaintiff-Counter-Defendant-Appellant-
Cross-Appellee,

INDUSTRIAL RE INTERNATIONAL, INC.,

Plaintiff-Appellant-Cross-Appellee,

-- v. --

P.T. JAMSOSTEK (PERSERO) and REPUBLIC OF INDONESIA,

Defendants-Appellees-Cross-Appellants,

Daniel J. Lodderhose and Security Resources
International, Inc.,

Defendants-Counter-Claimants-Cross-Defendants,

Security Resources International, Inc., GC Insurance
Brokers, Limited, CG Intermediaries Limited, Peter I.
Greengrass, Leslie J. Cooper and A.J. Smith,

Defendants-Counter-Claimants,

Prio Adhi Sartano,

Consolidated Defendant.

--------------------------------------------------------x

B e f o r e :  WALKER, McLAUGHLIN, and RAGGI, Circuit Judges.

Anglo-Iberia Underwriting Management Company and Industrial

Re International, Inc., appeal from an order of the United States District Court for the Southern District of New York (Donald C. Pogue, Judge, of the United States Court of International Trade, sitting by designation) that dismissed their negligent supervision claim against P.T. Jamsostek (Persero) and the Republic of Indonesia for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). Because we conclude that P.T. Jamsostek (Persero) and the Republic of Indonesia were not engaged in "commercial activity" for purposes of the FSIA, and that, even assuming arguendo that they were involved in "commercial activity," their alleged negligent supervision of Jamsostek employees was not "in connection with" such commercial activity, we AFFIRM the district court's dismissal of the claim for lack of subject matter jurisdiction.

AFFIRMED.

> JOHN R. KEOUGH, III (Cody D. Constable, Peter C. Dee, on the brief), Waesche, Sheinbaum & O'Regan, P.C., New York, NY, for Plaintiffs-Appellants-Cross-Appellees.
>
> FRANK PANOPOULOS (Carolyn B. Lamm, Nicole Erb, Claire DeLelle, on the brief), White & Case LLP, Washington, DC, for Defendants-Appellees-Cross-Appellants.

JOHN M. WALKER, JR., Circuit Judge:

Anglo-Iberia Underwriting Management Company and Industrial Re International, Inc. (collectively, "Anglo-Iberia") appeal from

2

an order of the United States District Court for the Southern District of New York (Donald C. Pogue, Judge, of the United States Court of International Trade, sitting by designation) that dismissed Anglo-Iberia's negligent supervision claim against the Indonesian state-owned social security insurer, P.T. Jamsostek (Persero) ("Jamsostek"), and the Republic of Indonesia ("Indonesia") for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611.  Because we conclude that neither Jamsostek nor Indonesia was involved in "commercial activity" for purposes of the FSIA, 28 U.S.C. § 1605(a)(2), and that, even assuming arguendo that they were involved in "commercial activity," Jamsostek's alleged failure to supervise its employees was not "in connection with" such commercial activity, id., we AFFIRM the district court's dismissal of Anglo-Iberia's claim for lack of subject matter jurisdiction.

**BACKGROUND**

This case comes before this court for a second time, see Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose, 235 F. App'x 776 (2d Cir. 2007) (summary order) ("Anglo-Iberia I"), and involves only the negligent supervision claim we remanded in Anglo-Iberia I.  Specifically, this appeal concerns the district court's dismissal on remand of Anglo-Iberia's claim that Jamsostek negligently supervised its employee, Prio Adhi Sartono,

3

as well as other Jamsostek employees who acted together with Sartono to perpetrate an international commercial reinsurance fraud scheme to Anglo-Iberia's detriment. According to Anglo-Iberia, Jamsostek's negligent supervision of its employees enabled Sartono to commit commercial reinsurance fraud against Anglo-Iberia while Sartono was in Colorado pursuing a Jamsostek-sponsored MBA.[1] On remand, the district court concluded that it lacked subject matter jurisdiction over Anglo-Iberia's negligent supervision claim against Jamsostek and Indonesia because Jamsostek's activities were not commercial in nature and did not fall within a FSIA-enumerated exception to sovereign immunity. See Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose, No. 97-0084 (DCP), 2008 WL 190364, at *1, *4-5 (S.D.N.Y. Jan. 22, 2008). We assume familiarity with this court's May 2007 summary order and the opinions below,[2] and set forth the relevant facts

---

[1] The district court imposed damages, and reasonable attorney's fees and costs, against, inter alia, individual defendants Sartono and Daniel J. Lodderhose. See Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose, 287 F. Supp. 2d 454 (S.D.N.Y. 2003); Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose, 282 F. Supp. 2d 126 (S.D.N.Y. 2003).

[2] The district court denied Anglo-Iberia's motion for reconsideration in an unpublished, two-page order dated April 30, 2008. See Special App. 18-19. More detailed descriptions of the events giving rise to Sartono's fraud are available at Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose, 224 F. Supp. 2d 679, 681-84 (S.D.N.Y. 2002); Anglo-Iberia Underwriting Mgmt. Co. v. PT Jamsostek, No. 97 Civ. 5116 HB, 1999 WL 76909, at *2-5 (S.D.N.Y. Feb. 16, 1999); and Anglo-Iberia Underwiting Mgmt. Co. v. PT Jamsostek, No. 97 Civ. 5116(HB), 1998 WL 289711, at *1-2 (S.D.N.Y. June 4, 1998).

4

in the discussion section only insofar as necessary to resolve the instant appeal.

**DISCUSSION**

**I.   FSIA Generally and Standard of Review**

"The FSIA 'provides the sole basis for obtaining jurisdiction over a foreign state in federal court.'" Matar v. Dichter, 563 F.3d 9, 12 (2d Cir. 2009) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989)).  In general, a foreign state or an "agency or instrumentality of a foreign state," 28 U.S.C. § 1603(b), is immune from federal court jurisdiction unless a specific exception to the FSIA applies, Matar, 563 F.3d at 12.  See also 28 U.S.C. § 1604; Kato v. Ishihara, 360 F.3d 106, 107-08 (2d Cir. 2004) ("The FSIA codifies the restrictive theory of sovereign immunity, under which foreign sovereigns and their agencies or instrumentalities enjoy immunity from suit in United States courts, subject to a few, enumerated statutory exceptions." (internal quotation marks, citations, and alterations omitted)).

The burden is on the defendant seeking sovereign immunity to show it is a foreign sovereign.  Matar, 563 F.3d at 12.  Once the defendant makes this showing, the burden then shifts to the plaintiff to show that a FSIA-enumerated exception to sovereign immunity applies.  Id.  "Determining whether this burden is met involves a review of the allegations in the complaint, the

5

undisputed facts, if any, placed before the court by the parties, and – if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue – resolution of disputed issues of facts."  In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 80 (2d Cir. 2008) (internal quotation marks and alterations omitted).  The district court may look to evidence outside the pleadings and hold an evidentiary hearing, if it believes one is warranted, in resolving the question of jurisdiction.  See Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998).  The ultimate burden of persuasion remains with the party seeking sovereign immunity.  See In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d at 80; see also Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.8 (2d Cir. 2001) (noting that "the defendant must show that the alleged exception does not apply by a preponderance of the evidence").

The parties do not dispute that Jamsostek and Indonesia are foreign sovereigns presumptively entitled to sovereign immunity. Rather, the issue in contention is whether an exception to their sovereign immunity applies.  We review a district court's decision concerning subject matter jurisdiction under the FSIA for clear error as to factual findings, and de novo as to legal conclusions.  Matar, 563 F.3d at 12 (citing Robinson, 269 F.3d at 138).

**II.  FSIA's "Commercial Activity" Exception**

6

FSIA's "commercial activity" exception – the only FSIA exception that Anglo-Iberia invokes – abrogates sovereign immunity in cases in which the action is based upon

> [1] a commercial activity carried on in the United States by the foreign state; or upon
>
> [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon
>
> [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). A "commercial activity" is defined under the FSIA as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The "commercial character" of a defendant's conduct, transaction, or act is determined "by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Id. Because Anglo-Iberia does not argue that the first clause of the "commercial activity" exception applies, cf. Anglo-Iberia, 2008 WL 190364, at *2 n.6 (rejecting Anglo-Iberia's arguments under the first clause of the exception), the issue for this appeal is whether Anglo-Iberia has shown that Jamsostek and Indonesia are subject to federal court jurisdiction under either the second or third clauses of the "commercial activity" exception.

As an initial matter, we note that under both the second and

third clauses of the "commercial activity" exception, Anglo-Iberia must show that its negligent supervision claim is grounded upon an act in connection with the commercial activity of Jamsostek and Indonesia elsewhere.  See 28 U.S.C. § 1605(a)(2).[3]  Thus, should Anglo-Iberia fail to establish that its claim is connected to Jamsostek and Indonesia's commercial activity, if any, in Indonesia, Anglo-Iberia's claim necessarily fails.  Because we conclude that Anglo-Iberia's negligent supervision

---

[3]  A primary difference between the second and third clauses of the "commercial activity" exception is the location of the relevant act upon which the plaintiff's claim is based, although in both clauses that act must be "in connection with a commercial activity of the foreign state elsewhere."  28 U.S.C. § 1605(a)(2).

Thus, Anglo-Iberia argues under the second clause of the "commercial activity" exception that its negligent supervision claim is based upon (1) "the acts [Jamsostek] performed in the United States by supervising and administering its job training program with Sartono and other employees . . . , 'in connection with' its employment of Sartono and the other wrongdoing employees at its commercial offices in Indonesia conducting insurance business," and (2) "Anglo-Iberia's act of depositing [reinsurance] premiums in a New York bank . . . and the commercial activity of [Jamsostek] in supervising its employees in Indonesia."  See Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 157 (2d Cir. 2007) (noting that the second clause of the "commercial activity" exception "is generally understood to apply to non-commercial acts in the United States that relate to commercial acts abroad" (internal quotation marks and emphasis omitted)).

Meanwhile, Anglo-Iberia claims under the third clause of the "commercial activity" exception that "[Jamsostek]'s negligent supervision of its employees in Indonesia and Monaco in connection with commercial activity of [Jamsostek] in Indonesia caused a direct effect in the United States," thereby causing Anglo-Iberia "to enter the reinsurance transactions with [Jamsostek]'s employees" and incur "financial losses in the United States."

8

claim is not based upon an act "in connection with a commercial activity of [Jamsostek and Indonesia] elsewhere," 28 U.S.C. § 1605(a)(2), we reject Anglo-Iberia's contention that it has sustained its burden under the FSIA of going forward with evidence showing that immunity should not be granted. See Robinson, 269 F.3d at 141.

We reach this conclusion because Anglo-Iberia has not demonstrated that Jamsostek and Indonesia were involved in "commercial activity" for purposes of the FSIA. In Republic of Argentina v. Weltover, 504 U.S. 607 (1992), the Supreme Court explained that a foreign state engages in commercial activity "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it," and thus, that sovereign immunity does not bar a suit "based upon a foreign state's participation in the marketplace in the manner of a private citizen or corporation." 504 U.S. at 614. The Supreme Court reiterated this principle in Saudi Arabia v. Nelson, 507 U.S. 349 (1993), wherein it explained that "a state engages in commercial activity [under the FSIA] where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns. Put differently, a foreign state engages in commercial activity for purposes of [the FSIA] only where it acts in the manner of a private player within the market." 507 U.S. at 360 (internal

9

quotation marks omitted); see also Hanil Bank v. PT. Bank Negara Indonesia (Persero), 148 F.3d 127, 131 (2d Cir. 1998).

Thus, to determine the nature of a sovereign's act, we ask not "whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but rather "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" Weltover, 504 U.S. at 614; see also Nelson, 507 U.S. at 360-61. We begin this inquiry by examining the act of the foreign sovereign that serves as the basis for the plaintiff's claim. See Garb v. Republic of Poland, 440 F.3d 579, 586 (2d Cir. 2006) (identifying this as "a threshold step in assessing [a party's] reliance on the 'commercial activity' exception"). Here, the basis of Anglo-Iberia's claim is Jamostek's alleged negligent supervision of Sartono and other employees in connection with Jamsostek's provision of health insurance in Indonesia.[4] We thus look to whether the actions

---

[4] We conclude that the district court properly rejected Anglo-Iberia's claim under the second clause of the "commercial activity" exception for the reasons set forth in its opinion. See Anglo-Iberia, 2008 WL 190364, at *2 n.6 (explaining that the proper focus is on Jamsostek's alleged negligent supervision with respect to its insurance activities in Indonesia because Jamsostek's support of Sartono in a U.S.-based MBA program was purely incidental to his employment). We similarly reject Anglo-Iberia's argument that jurisdiction exists under the FSIA on the basis of its act of depositing reinsurance premiums in a New York bank.

10

Jamsostek performs with respect to its role as Indonesia's default health insurer are the type of actions by which a private party engages in trade and traffic or commerce.

Anglo-Iberia argues that it properly invoked the "commercial activity" exception because Jamsostek competes with private insurers in providing health insurance to Indonesians and acts akin to a private insurer in its hiring, training, employment, and supervision of employees to perform non-discretionary duties such as locating health care providers, processing and verifying health insurance claims, collecting health insurance premiums, and preparing reports.[5] However, in arguing that Jamsostek behaves like a private insurer, Anglo-Iberia mischaracterizes the nature of the acts Jamsostek performs "in its capacity as the default health insurer, under Indonesia's national social security program, which . . . Jamsostek operates and administers." Anglo-Iberia, 2008 WL 190364, at *4. As the district court correctly found, Jamsostek "does not sell insurance to workers or to employers in any traditional sense" and does not otherwise compete in the marketplace like a private insurer. Id. at *5. Rather, as the default health insurer under

---

[5] While Anglo-Iberia also argues, inter alia, that Jamsostek's employees' day-to-day activities of processing health claims and collecting health insurance premiums mirror the activities of a private insurer's employees, we properly focus our "commercial activity" analysis on "the particular actions that the foreign state performs," and not on the particular actions of any specific Jamsostek employee. Weltover, 504 U.S. at 614 (emphasis added); see also Kato, 360 F.3d at 111-12.

Indonesia's national social security program, Jamsostek "provides a general 'floor' for health insurance for all workers in Indonesia" and ensures that "Indonesian employers with at least ten employees" comply with the governmental mandate that they provide, at a minimum, basic health insurance coverage to their workers. Id.[6]

Thus, we agree with the district court that, for purposes of our analysis under Weltover, the nature of Jamsostek's hiring, supervision, and employment of Sartono and other employees is directly concerned with "employment in the provision of a governmental program of health benefits through collection of employer contributions and payroll deductions" and that "such employment is by nature non-commercial." Id. at *4. Despite Anglo-Iberia's argument to the contrary, to hold otherwise and look only to the fact of employment for purposes of our "commercial activity" analysis would allow the exception to swallow the rule of presumptive sovereign immunity codified in the FSIA. See id. at *4 n.10.

Based on the record evidence, we easily conclude that Jamsostek's acts of providing basic health insurance to Indonesia's workforce and monitoring employers' compliance with

---

[6] Contrary to Anglo-Iberia's arguments, these qualities define the nature of Indonesia's national health insurance system, not merely its purpose, because a private insurer could not compel employers to purchase coverage. Cf. Weltover, 504 U.S. at 616-17.

the governmental mandate under the national social security program are carried out in its capacity as Indonesia's default health insurer.  Jamsostek's insurance operations do not equate to those of an independent actor in the private marketplace of potential health insurers.  Despite Anglo-Iberia's assertions to the contrary, Jamsostek's actions in connection with the administration of Indonesia's national health insurance program are sovereign in nature and do not suffice to bring it within the "commercial activity" exception to the FSIA.  Compare Nelson, 507 U.S. at 361 (holding that conduct "peculiarly sovereign in nature" does not satisfy the "commercial activity" exception), and Junqquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1030 (D.C. Cir. 1997) (holding that officials' actions in administering a government health program were "uniquely sovereign in nature" despite "relat[ing] in certain respects to commercial activity"), with Weltover, 504 U.S. at 615 (concluding that Argentina's issuance of government bonds to refinance its debt was commercial in nature because the bonds "in almost all respects [are] garden-variety debt instruments . . . [that] may be held by private parties . . . [and] are negotiable and may be traded on the international market").

Anglo-Iberia's argument under the "commercial activity" exception also fails for a second reason:  Jamsostek's alleged negligence was not "in connection with" its health insurance

13

activities in Indonesia. Even assuming _arguendo_ and contrary to fact that the nature of Jamsostek's insurance activities were commercial and not sovereign, Anglo-Iberia has not shown a sufficient nexus between Jamsostek's alleged negligent supervision and its alleged commercial activity for purposes of abrogating Jamsostek's presumptive sovereign immunity under the FSIA. We have made clear that "[t]he statutory term 'in connection,' as used in the FSIA, is a term of art, and we interpret it narrowly." _Garb_, 440 F.3d at 587. As such, "acts are 'in connection' with . . . commercial activity so long as there is a 'substantive connection' or a 'causal link' between them and the commercial activity." _Id._ (internal quotation marks and alterations omitted); _see also_ _Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari_, 12 F.3d 317, 330 (2d Cir. 1993) (declining to read § 1605(a)(2)'s "connection" language "to include tangential commercial activities to which the 'acts' forming the basis of the claim have only an attenuated connection").

Here, we cannot conclude that Jamsostek's alleged negligent supervision of Sartono and his colleagues was "in connection with" its provision of basic health insurance in Indonesia. The commercial reinsurance scheme that is said to have injured Anglo-Iberia was Sartono's alone and wholly unrelated to any negligent supervision by Jamsostek with respect to its insurance activities

14

in Indonesia. Indeed, during the relevant time period, Sartono was relieved of his regular employment responsibilities, was unauthorized to conduct any commercial reinsurance activities, and was prohibited from conducting Jamsostek business in Monaco, the United States, or elsewhere abroad. See Anglo-Iberia, 2008 WL 190364, at *1 (adopting earlier district court findings). In addition, whatever assistance Sartono's Jamsostek-based colleagues rendered to Sartono was provided solely at the direction of Sartono, primarily occurred off-premises, did not involve Jamsostek's business accounts, and was plainly unrelated to Jamsostek's administration of Indonesia's social security program. In essence, Anglo-Iberia faults Jamsostek for failing to stop Sartono from enlisting the help of a few of his Jamsostek colleagues, some of whom claimed to be acting unwittingly, in establishing a fraudulent side business. The record, however, demonstrates nothing more than the barest connection between Anglo-Iberia's alleged injuries by Sartono and Jamsostek's alleged negligent supervision of Sartono and others with respect to its social insurance activities in Indonesia. Compare Weltover, 504 U.S. at 614-15 (concluding that Argentina's act of unilaterally extending its payment obligations was in connection with its commercial activity of issuing bonds), with O'Bryan v. Holy See, 556 F.3d 361, 380 (6th Cir. 2009) (holding "commercial activity" exception inapplicable to plaintiff's claims of

15

negligent supervision because the "gravamen" of plaintiff's claims did not "truly sound[ ] in commercial activity"), cert. denied, 130 S. Ct. 361 (2009), and Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General, 923 F.2d 380, 386 (5th Cir. 1991) ("Not only must there be a jurisdictional nexus between the United States and the commercial acts of the foreign sovereign, there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign.").

Thus, even if we were to conclude – contrary to fact – that Jamsostek's administration of Indonesia's national health insurance program and its employment of Sartono and his colleagues were commercial in nature, Jamsostek's alleged negligent supervision of these employees is not sufficiently connected to its insurance operations in Indonesia to satisfy the "in connection with" requirement of FSIA's "commercial activity" exception. To conclude otherwise under the facts of this case would be to abrogate a foreign sovereign's immunity solely on the basis of an employment relationship and would allow Anglo-Iberia to recast what is effectively a fraud claim, lacking any significant nexus to Jamsostek's insurance activities in Indonesia, as a negligent supervision claim sufficient to bring Jamsostek within FSIA's "commercial activity" exception. See Nelson, 507 U.S. at 363.

16

We therefore conclude that Anglo-Iberia has failed to demonstrate that Jamsostek is subject to jurisdiction under FSIA's "commercial activity" exception.  We similarly conclude that Anglo-Iberia has failed to demonstrate that Indonesia is subject to jurisdiction under the FSIA because Anglo-Iberia's claim against Indonesia rests on the success of its allegations against Jamsostek and because Anglo-Iberia has not overcome the presumption that Jamsostek is a "juridical entit[y] distinct and independent from" Indonesia.  First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 627-29, 632 (1983).  Having concluded that Anglo-Iberia's negligent supervision claim fails to satisfy the "commercial activity" exception set forth under 28 U.S.C. § 1605(a)(2), we do not reach Anglo-Iberia's remaining arguments on appeal or Jamsostek and Indonesia's arguments on cross-appeal.[7]

**CONCLUSION**

For the forgoing reasons, the district court's dismissal of Anglo-Iberia's negligent supervision claim for lack of subject matter jurisdiction is AFFIRMED.

---

[7] Specifically, we do not reach Jamsostek and Indonesia's challenge to the district court's holding that if Jamsostek's negligent supervision were "in connection with" a "commercial activity," it had a "direct effect" in the United States within the meaning of 28 U.S.C. § 1605(a)(2).  We also decline to reach Jamsostek and Indonesia's argument that the torts exception, see 28 U.S.C. § 1605(a)(5), bars Anglo-Iberia's negligent supervision claim.

17