# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 6, 2018   Decided March 12, 2019

No. 17-7118

DARRYL LEWIS,
APPELLANT

v.

KALEV MUTOND, IN HIS INDIVIDUAL CAPACITY ONLY,
ADMINISTRATEUR GENERALE, AGENCE NATIONALE DE
RENSEIGNEMENTS, DEMOCRATIC REPUBLIC OF THE CONGO
AND ALEXIS TAMBWE MWAMBA, IN HIS INDIVIDUAL CAPACITY
ONLY, MINISTRE DE LA JUSTICE, GARDE DES SCEAUX ET
DROITS HUMAINS, DEMOCRATIC REPUBLIC OF THE CONGO,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01547)

———

*Merrill C. Godfrey* argued the cause and filed the briefs for appellant.

*Robert N. Weiner* argued the cause for appellees. With him on the brief were *Raul R. Herrera*, *R. Stanton Jones*, and *Stephen K. Wirth*.

Before: SRINIVASAN and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* WILKINS.

Concurring opinion filed by *Circuit Judge* SRINIVASAN.

Opinion concurring in the judgment filed by *Senior Circuit Judge* RANDOLPH.

WILKINS, *Circuit Judge*:   This case involves a lawsuit brought under the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. 102–256, 106 Stat. 73 (1992), by an American citizen who sued two foreign officials from the Democratic Republic of the Congo ("DRC") for alleged torture over a six-week period.   Plaintiff seeks compensatory and punitive damages.

Defendants moved to dismiss for lack of subject matter jurisdiction; lack of personal jurisdiction; and insufficient service of process.   The District Court granted the motion to dismiss, holding the court lacked subject matter jurisdiction because the defendants are immune under the common law foreign official immunity doctrine.

For the reasons set forth below, we conclude that Defendants are not entitled to foreign official immunity under the common law.   Because such immunity does not apply in this case, we vacate the ruling of the District Court dismissing for lack of subject matter jurisdiction and remand for further proceedings.   In the opinion by Senior Judge Randolph, which is joined in relevant part by Judge Srinivasan, we provide the alternative holding that the TVPA displaces conduct-based immunity in this context.

**I.**

The following facts are taken from the complaint and assumed true on review of Defendants' motion to dismiss. *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002). In April 2016, Plaintiff Darryl Lewis, an American citizen, was in the DRC working as an "unarmed security advisor" to Moise Katumbi. J.A. 4. Katumbi, the former governor of the Katanga Province, was running for president of the DRC. In his complaint, Plaintiff asserts that, on April 24, 2016, he was traveling by car with a colleague in Lubumbashi when he was stopped by a local police officer near a political rally. Lewis, his colleague, and colleagues in a separate vehicle were detained by the National Intelligence Agency, Agence Nationale de Renseignements ("ANR"). Plaintiff describes being physically assaulted during the arrest process and being accused of being an American mercenary soldier, which he denies. Lewis and his colleagues were then transported to a local jail, where ANR members continued to assault them during a lengthy interrogation. The following morning, they were transported by air to Kinshasa, where Lewis was incarcerated and interrogated daily for six weeks. Plaintiff alleges that he was interrogated daily by ANR members for approximately sixteen hours a day and was intentionally starved and denied sleep and basic hygienic necessities.

Plaintiff claims that Defendant Kalev Mutond, General Administrator of the ANR, was involved in his detention in Kinshasa, at one point warning him: "Don't let me find out you're a mercenary." J.A. 7. Plaintiff further claims that Defendant Alexis Thambwe Mwamba, DRC Minister of Justice, publicly accused him of being a mercenary sent to assassinate President Joseph Kabila during a press conference on May 4, 2016, claiming to have "documented proof." J.A. 7. The following day on May 5, 2016, the U.S. Embassy in Kinshasa allegedly issued a statement condemning the remarks

concerning Lewis and mercenary activities. Lewis was released on June 8, 2016, having never been charged with a crime.

Plaintiff contends that Defendants are liable under the TVPA. The TVPA creates an express cause of action against "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture.'' 28 U.S.C. § 1350 (note) sec. 2(a). Plaintiff's complaint alleges that "Defendants at all times used their respective positions of authority to act under apparent authority or color of law of the DRC with respect to the actions alleged in this complaint." J.A. 11. Rather than order his release from custody and protect him from torture, Plaintiff argues, Defendants enabled the abuses described in the complaint.

Defendants moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that Plaintiff's complaint alleges acts exclusively taken in Defendants' official capacity. Because foreign officials enjoy immunity from suits based on official acts committed in their official capacities, Defendants argued, the District Court lacked jurisdiction. The District Court agreed and granted Defendants' motion to dismiss. *Lewis v. Mutond*, 258 F. Supp. 3d 168, 172 (D.D.C. 2017). Plaintiff timely appealed.

## II.

This Court reviews *de novo* the District Court's dismissal for lack of subject-matter jurisdiction. *Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016). The defendant bears the burden of proving foreign official immunity. *Cf. Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (explaining that a foreign state defendant who

asserts the defense of immunity under the Foreign Sovereign Immunities Act "bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity").

**A.**

Because this case involves foreign officials – not foreign states – the issue of immunity is governed by the common law, not the Foreign Sovereign Immunities Act ("FSIA"). *See Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) (noting that a case "in which respondents have sued petitioner in his personal capacity . . . is properly governed by the common law"). The doctrine of common law foreign immunity distinguishes between two types of immunity: status-based and conduct-based immunity. Status-based immunity is reserved for diplomats and heads of state and attaches "regardless of the substance of the claim." Chimène I. Keitner, *The Common Law of Foreign Official Immunity*, 14 GREEN BAG 2d 61, 64 (2010); *see also Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012). Conduct-based immunity is afforded to "any [] [p]ublic minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." Restatement (Second) of Foreign Relations Law § 66(f) (1965) (hereinafter Restatement); *see also Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009); *Samantar*, 699 F.3d at 774.

As explained by the Supreme Court in *Samantar*, a two-step procedure is used to determine whether a foreign official is entitled to conduct-based foreign sovereign immunity. *Samantar*, 560 U.S. at 311-12. At the first step, a foreign official requests a "suggestion of immunity" from the State Department and, if granted, the District Court is divested of its jurisdiction. *Id.* at 311. If the State Department does not grant

a suggestion of immunity, the District Court is authorized to decide whether *all* the requisites for foreign-official immunity exist. *Id*. at 311-12.

**B.**

We turn to the two-step procedure outlined in *Samantar* to evaluate Defendants' claim to conduct-based immunity. At step one, *see Samantar*, 560 U.S. at 311-12, we conclude that Defendants are not entitled to immunity. On August 9, 2016, the DRC Ambassador to the United States sent a letter to the United States Department of State denying Plaintiff's allegations and requesting that the State Department submit a suggestion of immunity to the court. This request was reiterated in a December 13, 2016 follow-up letter. However, the State Department did not accede to the plea of the DRC, and never issued a request that the District Court surrender its jurisdiction.

At step two, we consider whether Defendants satisfy the requisites for conduct-based immunity. The Supreme Court has "expressed no view on whether Restatement [2d of Foreign Relations] § 66 correctly sets out the scope of the common-law immunity applicable to current or former foreign officials." *Samantar*, 560 U.S. at 321 n.15. Here, however, both parties assume § 66 accurately sets out the scope of common-law immunity for current or former officials, *see* Appellees' Br. 14 & n.4, and we therefore proceed on that understanding without deciding the issue. Assuming, as the parties do, that Restatement § 66 captures the contours of common-law official immunity, Defendants are not entitled to immunity.

Under Restatement § 66, the court considers three factors. First, whether the actor is a public minister, official, or agent of the foreign state. Restatement § 66(f). Second, whether the

acts were performed in her official capacity. *Id.* And third, whether exercising jurisdiction would serve to enforce a rule of law against the foreign state. *Id.* To establish conduct-based immunity, a defendant must establish all three factors. Restatement § 66 cmt. b ("Public ministers, officials, or agents of a state . . . do not have immunity from personal liability *even for acts carried out in their official capacity*, unless the effect of exercising jurisdiction would be to enforce a rule against the foreign state." (emphasis added)).

As a result, to enjoy conduct-based immunity as defined by the Restatement, Defendants must satisfy the third factor by proving that exercising jurisdiction in this case is tantamount to enforcing a rule of law against the DRC itself. *See* Restatement § 66(f). Defendants attempt to prove this, in part, by arguing that "Plaintiff's suit seeks to hold high-ranking DRC government officials liable for official conduct carried out entirely within the DRC." Appellees' Br. 30. This position elides the second and third elements for establishing conduct-based immunity. The second immunity element focuses on the nature of Defendant's acts and whether they were taken within an "official capacity." By contrast, the third element considers whether the remedies sought by Plaintiff serve to enforce a rule of law against the DRC. That element, as understood through the lens of the small number of decisions speaking to the existence and scope of common-law immunity, would allow for immunity when a judgment against the official would bind (or be enforceable against) the foreign state. *See* Beth Stephens, *The Modern Common Law of Foreign Official Immunity*, 79 FORDHAM L. REV. 2669, 2676-78 (2011) (examining cases).

This approach is reinforced by the illustrations in the Restatement commentary. For example, the Restatement explains:

> X, an official of the defense ministry of state A, enters into a contract in state B with Y for the purchase of supplies for the armed forces of A. A disagreement arises under the contract and Y brings suit in B against X as an individual, seeking to compel him to apply certain funds of A in his possession to satisfy obligations of A under the contract. X is entitled to the immunity of A.

Restatement § 66, cmt. B(2).

Defendants have not proffered anything to show that Plaintiff seeks to draw on the DRC's treasury or force the state to take specific action, as would be the case if the judgment were enforceable against the state. Defendants in this case are being sued in their individual capacities and Plaintiff is not seeking compensation out of state funds. J.A. 2; *see also* Appellant's Br. 27 ("[T]he monetary liability sought here against individuals . . . would have no effect on the state treasury."). Defendants argue that the effect on the DRC's treasury is "irrelevant" because "[e]xercising jurisdiction here would compel the DRC's sitting Minister of Justice and General Director of the National Intelligence Agency to defend their handling of a high-profile domestic security matter in U.S. courts." Appellees' Br. 32. Taking such foreign officials away from their official duties in the DRC, Defendants argue, is a "sufficient sanction to constitute enforcing a rule of law on the DRC." Appellees' Br. 32 (alterations and quotations omitted). But these collateral effects are too attenuated to be equated with the direct fiscal impacts on the foreign state that are contemplated by the Restatement. *Cf. Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[E]ven though a State is not named a party to the action, . . . [if] the action is in essence one for the

recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity." (citation omitted)). In cases like this one, in which the plaintiff pursues an individual-capacity claim seeking relief against an official in a personal capacity, exercising jurisdiction does not enforce a rule against the foreign state. Defendants are thus not entitled to the conduct-based foreign official immunity. In view of our conclusion that Defendants have not satisfied the necessary third element of conduct-based immunity, we need not address Plaintiff's arguments relating to the first two elements.

**III.**

For these reasons, we vacate the District Court's grant of Defendant's motion to dismiss for lack of subject matter jurisdiction and remand for further proceedings. Defendants argue that, even if the District Court has subject matter jurisdiction, this Court should affirm on the basis that the court lacks personal jurisdiction over them. Defendants claim they do not have "any connection to the United States, and all of the conduct at issue is alleged to have occurred entirely within the DRC." Appellees' Br. 33 (citing *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005)); *see also* Fed. R. Civ. P. 4(k)(2). Plaintiff's memorandum in opposition to Defendants' motion to dismiss disagreed but requested jurisdictional discovery if the court were inclined to agree with Defendants. *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 525 (D.C. Cir. 2001) ("Certainly, 'a plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery.'" (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996)) (alterations omitted)). The District Court neither addressed Defendants' personal jurisdiction argument nor ruled on Plaintiff's request for jurisdictional discovery. *Lewis v. Mutond*, 258 F. Supp. 3d

168, 174-75 (D.D.C. 2017).  We decline to decide the matter in the first instance.  Accordingly, on remand, the District Court should consider the question of personal jurisdiction and whether Plaintiff is entitled to jurisdictional discovery.

*So ordered.*

SRINIVASAN, *Circuit Judge*, concurring:

I fully join Judge Wilkins's opinion, which explains that if, as the parties assume, Restatement (Second) of Foreign Relations Law § 66(f) sets out the scope of common-law, conduct-based immunity for foreign officials, the defendants in this case do not qualify for that immunity. I also agree with the portion of Judge Randolph's concurrence in the judgment explaining that the Torture Victim Protection Act (TVPA) subjects foreign officials to liability for acts undertaken in an official capacity and thus displaces any common-law, conduct-based immunity that might otherwise apply in the context of claims under that Act. *See* Concurring Op. 3–4. In my view, therefore, the defendants in this case do not qualify for immunity for either of two reasons: (a) as Judge Wilkins explains, they fall outside the scope of the common-law, conduct-based immunity contemplated by Restatement § 66(f); or (b) as Judge Randolph explains, they fall within the scope of liability contemplated by the TVPA per the allegations in the complaint.

RANDOLPH, *Senior Circuit Judge*, concurring in the judgment:

The court assumes that the immunity of the defendant foreign officials under the Torture Victims Protection Act turns on "the common law" and that the Restatement (Second) of Foreign Relations Law of the United States § 66(f) (1965)[1] embodies the governing common law.

I think both assumptions are dubious. Neither has been tested in an adversary proceeding.

Consider first the proposition that, as the court assumes, Restatement (Second) § 66(f)[2] recites the common law. The

---

[1] The Restatement (Second) was superseded by the Restatement (Third) of Foreign Relations Law of the United States (1987). *See* Beth Stephens, *The Modern Common Law of Foreign Official Immunity*, 79 Fordham L. Rev. 2669, 2678 n.45 (2011). There may be a plausible but oddly unexplained reason for invoking the older Restatement version and ignoring the newer. I see no need to get into this.

[2] "The immunity of a foreign state under the rule stated in § 65 extends to
    (a)   the state itself;
    (b)   its head of state and any person designated by him as a member of his official party;
    (c)   its government or any governmental agency;
    (d)   its head of government and any person designated by him as a member of his official party;
    (e)   its foreign minister and any person designated by him as a member of his official party;
    (f)   any other public minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state;
    (g)   a corporation created under its laws and exercising functions comparable to those of an agency of the state."
Restatement (Second) § 66.

common law is "the dominant consensus of common-law jurisdictions." *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995).[3] This Restatement is titled "Foreign Relations Law of the United States," but it does not pretend to be a statement of "common law." Instead it sets forth "rules of international law as distinguished from the rules of domestic law," "[e]xcept as otherwise indicated." Restatement (Second) § 2(2).[4] The immunity provision of Restatement (Second) § 66(f) contains no such exception, express or implied.

Restatement § 66(f) appears to be a distillation of scant case law in this country, international treaties to which the United States may or may not be a party, the writings of law professors here and abroad, negotiated settlements of international disputes, and other non-judicial sources such as actions of our Department of State and perhaps comments in meetings of the American Law Institute. Restatement (Second) § 1, comment *c*, explains that the "paucity of adjudicated decisions in the international

---

[3] Another definition of the common law, in a highly regarded posting in the Federal Register, is this: "The common law is a body of judge-made substantive rules, principles, and prescribed standards of conduct." Federal Trade Commission, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking, 29 Fed. Reg. 8324, 8365 (July 2, 1964); *see also* A. Raymond Randolph, *Before Roe v. Wade: Judge Friendly's Draft Abortion Opinion*, 29 Harv. J.L. & Pub. Pol'y 1035, 1044 (2006) ("The common law judge analyzes past judicial decisions, considers the reasons behind the decisions, comes up with a principle to explain the cases, and then applies that principle to a new case.").

[4] "Our duty is to enforce the Constitution, laws, and treaties of the United States, not to conform the law of the land to norms of customary international law." *United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991).

field has led to greater reliance on non-judicial sources than in domestic law." *See also* Restatement (Second) § 2, cmt. *f.*

If Restatement (Second) § 66(f) is not common law, and does not purport to be, how then does one discover the real common law? The answer is not obvious. It may well be that there is not now and never was any common law of immunity for foreign officials sued in the United States. "The lower courts will find only minimal guidance from [pre-1976] decisions involving the common law immunity of foreign officials. Those cases were 'few and far between,' and none addressed claims of human rights abuses." Stephens, *supra*, at 2671 (footnote omitted) (quoting *Samantar v. Yousuf*, 560 U.S. 305, 323 (2010)).[5]

Even if there were a common law of immunity for foreign officials and even if the Restatement (Second) § 66(f) stated it, the question remains: does the Restatement's version of the common law control actions such as this arising under the Torture Victims Protection Act of 1991, 28 U.S.C. § 1350 note? A foreign official may be immune from suit pursuant to the Restatement's § 66(f) only with respect "to acts performed in his official capacity." Here the Democratic Republic of the Congo notified the State Department that the defendants' alleged torture actions were "undertaken in their official capacities."

That may have satisfied a prerequisite for immunity under the Restatement, but it also amounted to a confession satisfying

---

[5] "The courts will not be able to turn to pre-FSIA common law decisions and commentary to determine the scope of the modern common law of official immunity in part because the cases were sparse, leaving a few guidelines but no substantial body of law." *Id.* at 2702. "Pre-FSIA" means before enactment of the Foreign Sovereign Immunities Act of 1976.

one of the prerequisites for liability under the Torture Act. Section 2(a) of the Torture Act does away with the Nuremberg defense, and more. Pursuant to § 2(a) an "individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture shall, in a civil action, be liable for damages to that individual." 28 U.S.C. § 1350 note § 2(a)(1). The Torture Act thus imposes liability for actions that would render the foreign official eligible for immunity under the Restatement. When there is such a clear conflict between statutory law and judge-made common law, the common law must give way. *See City of Milwaukee v. Illinois*, 451 U.S. 304, 314–15 (1981).[6]

I leave to the last a discussion of the Supreme Court's decision in *Samantar v. Yousuf* and our court's decision in *Manoharan v. Rajapaksa*, 711 F.3d 178 (D.C. Cir. 2013) (per curiam).

*Samantar v. Yousuf* interpreted the term "foreign state" in the following provision of the Foreign Sovereign Immunities Act (FSIA): "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States . . . ." 28 U.S.C. §1604. The Supreme Court held that "foreign state" did not include foreign officials. In so holding the Court did "not resolve the dispute among the parties as to the precise scope of an official's immunity at common law." 560 U.S. at

---

[6] "It has often been said that statutes in derogation of the common law are to be strictly construed. That is a relic of the courts' historical hostility to the emergence of statutory law." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012).

321.[7] Although the plaintiffs sued under the Torture Act, the Court did not address the conflict between the Torture Act and Restatement § 66(f).

As to our decision in *Manoharan v. Rajapaksa*, the case involved head-of-state immunity. As the court discusses in this case, Maj. Op. 5, there are two types of immunity for foreign officials – status-based, as in *Manoharan*, and conduct-based, as in the case before us. Head-of-state immunity and other status-based immunities are the predominant focus of U.S. case law, sparse as it is, related to foreign officials. *See Yousuf v. Samantar*, 699 F.3d 763, 772 (4th Cir. 2012); Restatement (Second) § 66, reporter's note 1. It is well established that when the executive provided a "suggestion of immunity," a head of state would be granted immunity by the courts. *See, e.g.*, *Ye v. Zemin*, 383 F.3d 620, 625–27 (7th Cir. 2004). These status-based immunities also derive from international treaties such as the Vienna Convention on Diplomatic Relations and United Nations Convention on Special Missions. Vienna Convention on Diplomatic Relations, art. 31, Apr. 18, 1961, 23 U.S.T. 3227 (diplomatic immunity); S. Rep. No. 102-249, at 8 (1991) (citing United Nations Convention on Special Missions, art. 21(1), *adopted* Dec. 8, 1969, 1400 U.N.T.S. 231 (entered into force June 21, 1985)) (head of state immunity). The legislative history of the Torture Act indicated that these immunities would survive. H.R. Rep. No. 102-367, at 5 (1991), 1992 U.S.C.C.A.N. 84, 88 ("[N]othing in the TVPA overrides the doctrines of diplomatic and head of state immunity.").

The conflict between the Torture Act's basis for liability and the Restatement's basis for immunity from liability was

---

[7] The Court "express[ed] no view on whether Restatement § 66 correctly sets out the scope of the common-law immunity applicable to current or former foreign officials." *Id.* at 321 n. 15.

neither briefed nor argued, although it should have been.  The immunity of foreign officials may be a jurisdictional question.  *See Belhas v. Ya'alon*, 515 F.3d 1279, 1281, 1283 (D.C. Cir. 2008).  I agree with the court that if the Restatement did apply, the defendants were not immune.