20-1691-cv
*Everard Findlay Consulting, LLC v. Republic of Suriname*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28ᵗʰ day of December, two thousand twenty.

PRESENT:   JOSÉ A. CABRANES,
           SUSAN L. CARNEY,
                    *Circuit Judges*,
           RICHARD K. EATON,
                    *Judge.*\*

---

EVERARD FINDLAY CONSULTING, LLC F/K/A EVERARD
FINDLAY LLC,

    *Plaintiff-Appellant*,        20-1691-cv

    v.

REPUBLIC OF SURINAME,

    *Defendant-Appellee.*

---

**FOR PLAINTIFF-APPELLANT:**     SOPEN SHAH (Madison, WI), Eric B.
                  Wolff (Seattle, WA), Lauren Pardee
                  Ruben (Denver, CO), Perkins Coie LLP.

---

\* Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

**FOR DEFENDANT-APPELLEE:** KENNETH I. SHACHTER, Simon Chang, Morgan, Lewis & Bockius LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Alison J. Nathan, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of April 30, 2020 of the District Court be and hereby is **VACATED** and the cause **REMANDED**.

Plaintiff-Appellant Everard Findlay Consulting, LLC (formerly known as Everard Findlay LLC) ("Plaintiff" or "Everard") appeals from an April 30, 2020 judgment of the District Court that dismissed Everard's April 15, 2019 Amended Complaint ("Complaint") asserting breach of contract and account stated claims against Defendant-Appellee, the Republic of Suriname ("Suriname") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The District Court held that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq. barred Everard's suit. Relying on this Court's decision in *Kato v. Ishihara*, 360 F.3d 106 (2d Cir. 2004), the District Court deemed the "commercial activity" exception to sovereign immunity inapplicable on the facts alleged, because the activity on which the suit was based (Suriname's engagement of Everard to develop a strategic branding campaign for Suriname) did not constitute "commercial activity" within the meaning of the FSIA.[1]

On appeal, Everard contends that Suriname's engagement of Everard *was* "commercial activity" under the FSIA, and that the District Court's contrary conclusion was based on a misreading of *Kato*. Everard further maintains that Suriname's commercial activity had the requisite connection to the United States for the commercial activity exception to apply. Accordingly, it submits, the FSIA does not bar this suit and we should vacate the District Court's order and remand the case to be litigated on the merits. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Because the District Court decision "was made on a motion to dismiss and did not purport to decide any dispute of fact," the applicability of the FSIA commercial activity exception "is a legal matter reviewed *de novo*." *Barnet as Tr. of 2012 Saretta Barnet Revocable Tr. v. Ministry of Culture & Sports of the Hellenic Republic*, 961 F.3d 193, 199 n.5 (2d Cir. 2020) (citation omitted).

---

[1] Suriname also argued for dismissal based on lack of personal jurisdiction and *forum non conveniens*, but the District Court did not consider those arguments.

Under the FSIA, foreign states are immune from civil suit in U.S. courts, subject to "enumerated statutory exceptions," *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010) (internal citations and quotation marks omitted), including the so-called "commercial activity" exception. Under this exception, foreign states are not shielded from suits "based [i] upon a commercial activity carried on in the United States by the foreign state; or [ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2) (bracketed numbers added).

It is well settled that whether an activity is commercial under the FSIA depends on the nature of the activity, and not its purpose. That is, in determining whether the commercial exception applies, courts do not ask "whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 561 (2d Cir. 2020) (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)). "[A] foreign state engages in commercial activity 'where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" *Id.* (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993)). The promotion of domestic commerce is a legitimate governmental function. *See Pablo Star*, 961 F.3d at 563-64 (interpreting *Kato*). Although the plaintiff bears the burden of production on the applicability of an FSIA exception "[t]he ultimate burden of persuasion remains with the party seeking sovereign immunity." *Jamsostek*, 600 F.3d at 175. In this case, that is Suriname.

*I: Commercial Activity*

Suriname's conduct in negotiating, entering, and allegedly breaching its promotional services agreement with the public-relations firm Everard was "commercial activity" within the meaning of the FSIA. In engaging a third-party contractor to promote its brand, Suriname behaved as do countless private companies involved in commerce and did not exercise any uniquely sovereign powers. Moreover, although Suriname's brief on appeal describes Everard as its "surrogate," neither the Complaint nor exhibits support such an inference. Although Suriname's agreements with Everard contemplate that Everard would "act as Suriname's press office," App'x at 32, this vague formulation does not appear to accurately characterize Everard's duties under the contracts referenced in the Complaint to any appreciable degree. Everard's role was not primarily to act or speak in Suriname's name, but rather, as Everard points out, and as it alleged in the Complaint, it was commissioned to produce "promotional materials common in the corporate world—a logo, a tagline, a theme song, a website, visual branding guidelines, print copy, and branded items like USB sticks . . . that Suriname could use at its discretion." App. Reply Br. at 13. Furthermore, to the extent

Everard did act as Suriname's "press office," there is no indication that Everard's activity involved any typically "governmental" activity. Indeed, since Everard's press office activity was to be performed "work[ing] closely with representatives of the Tourism sector," App'x at 32, it is reasonable to infer that Everard was involved in the "commercial" activity of promoting tourism. *See Pablo Star*, 961 F.3d at 562 ("promoting tourism" is activity "regularly undertaken by private entities"). [2]

### II: Connection with the United States

As previously stated, the FSIA does not immunize foreign states from suits based on commercial activity "carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). Commercial activity is "carried on" in the United States when it has "substantial contact" with the United States. 28 U.S.C. § 1603(e). Although it is clear that Congress intended the "substantial contact" standard to require "a tighter nexus than the 'minimum contacts' standard for due process," that standard is otherwise "poorly defined." *Pablo Star*, 961 F.3d at 565 (internal citations omitted). Here, however, we conclude that Suriname's commercial activity had substantial contact with the United States. Suriname chose to deal with an American company, and, as Everard points out, and as it alleged in its Complaint, "key contractual negotiations [allegedly] occurred in New York, many aspects of the contract were performed in New York, Suriname paid under the contract by wiring U.S. dollars to U.S. bank accounts, and the contract targeted the U.S. travel market." App. Reply Br. at 18; App'x at 6,8. *See, e.g., Pablo Star*, 961 F.3d at 565-66 (finding substantial contact with the United States where promotional campaign of Welsh government—a political subdivision of the United Kingdom with substantial devolved powers—"reached beyond the confines of its consular office" to target an American audience and involved activities in New York and contracts with New York companies); *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir. 1983) (Friendly, *J.*) (noting that a finding of substantial contact may be based on "as little activity as 'receiving financing from a private or public lending institution located in the United States'") (internal citations and alterations omitted)).

Suriname erroneously argues that commercial activity is not "carried on in the United States" within the meaning of 28 U.S.C. § 1605(a)(2) unless the specific act on which the plaintiff's suit is based—which Suriname identifies as its alleged failure to pay Everard—had a substantial contact with the United States. On the contrary, it is proper to consider Suriname's predicate course of commercial activity as a whole. "When a foreign state has carried on a commercial activity within the United States … [the FSIA] withdraws immunity with respect to claims based not only on acts within the United States but also with respect to acts outside the United States if they comprise an

---

[2] In rendering its decision, the District Court did not have the benefit of our decision in *Pablo Star*, which was issued after the court dismissed Everard's Complaint.

4

integral part of the state's regular course of commercial conduct or particular commercial transaction 'having substantial contact with the United States.'" *Universe Tankships, Inc.*, 708 F.2d at 84 (internal citations omitted). Because we hold that Everard's suit is based on Suriname's commercial activity carried on in the United States, we need not consider Everard's alternative argument that its suit is based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

In sum: The FSIA does not shield Suriname from Everard's suit, because that suit is based on Suriname's commercial activity carried on in the United States. The District Court therefore erred in dismissing Everard's suit under Fed. R. Civ. P. 12(b)(1) and we are required to vacate its judgment.

## CONCLUSION

We have reviewed all of the arguments raised by Suriname on appeal and find them to be without merit. For the foregoing reasons, we **VACATE** the April 30, 2020 judgment of the District Court, and **REMAND** the cause to the District Court for further proceedings consistent with this order.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] Suriname is free to reassert its arguments regarding personal jurisdiction and *forum non conveniens* on remand.

5